1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT

8                          NORTHERN DISTRICT OF CALIFORNIA

9

10    JEROME BLANE SEPHERS,                        No. C 06-1593 SI (pr)

11            Plaintiff,                            **ORDER GRANTING SUMMARY
                                                    JUDGMENT**
12         v.

13    ERIC DIAS # 13890;
      RICHARD WHEATON # 142941,
14
              Defendants.
15    _____/

16

17                                    **INTRODUCTION**

18         This case is now before the court for consideration of defendants' motion for summary

19    judgment.  For the reasons discussed below, the motion will be granted and judgment will be

20    entered in defendants' favor.

21

22                                    **BACKGROUND**

23         This action concerns the amount of force used when defendants arrested Jerome Blane

24    Sephers.  The following facts are undisputed except as otherwise noted.

25         On March 14, 2005, Eric Dias and Richard Wheaton were police officers in the Menlo

26    Park police department.  Jerome Blane Sephers lived in Menlo Park in a room he rented from

27    Doris Backey.

28

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1    At about 12:30 a.m. on March 14, 2005, the homeowner's son, Reginald Backey, made

2   a 9-1-1 call to police and reported that Sephers had challenged him to a fight. Backey told police

3   he wanted Sephers out of the home and that Sephers had been drinking. Officer Wheaton and

4   other officers responded to the call and asked Sephers to leave for the night. The officers

5   discovered that Sephers had a suspended driver's license and advised him not to drive his vehicle

6   that was parked in the driveway. Sephers agreed to leave for the night and surrendered the keys

7   to his vehicle. While responding to the call, officer Wheaton also learned that Sephers was a

8   registered sex offender (having been convicted of rape by force).

9    Within an hour, at about 1:30 a.m., Reginald Backey again called 9-1-1 and reported that

10  Sephers was back at the home and causing a disturbance. Officer Dias was the first officer to

11  respond to this second call. Officer Dias saw Sephers walking on the street and went to

12  investigate the situation, pulling his car up near Sephers as Sephers was finishing a cell phone

13  conversation. Sephers initially told officer Dias that he did not want any problems and wanted

14  his car keys. Sephers then became agitated and put his right hand in his waistband area, which

15  officer Dias thought might mean he had a weapon. Officer Dias told Sephers to remove his hand

16  from his waistband, but Sephers refused. Instead, Sephers made a move toward officer Dias.

17  Officer Dias unholstered his weapon and ordered Sephers to put his hands in the air. Sephers

18  refused to comply and abruptly ran away. Officer Dias ordered him to stop, but Sephers refused.

19  Officer Dias put out a radio call for emergency officer assistance and chased after Sephers.

20  Sephers discarded a tissue with crack cocaine in it as he ran from officer Dias.

21   Sephers eventually ran into a dead-end corner of a churchyard. He turned around and

22  started coming back toward officer Dias while screaming and yelling, becoming increasingly

23  agitated. He puffed out his chest and raised his hands as if to start a fist fight. Officer Dias

24  ordered Sephers to get on the ground, but Sephers refused and instead advanced toward officer

25  Dias, who then pulled out his baton for defense.

26   Meanwhile, officer Wheaton arrived in response to the officer assistance call. Officer

27  Wheaton came into the churchyard and saw that Sephers was advancing toward officer Dias in

28  what appeared to be a threatening and dangerous manner. Officer Wheaton ran up to Sephers

**United States District Court**
For the Northern District of California

1   from behind and tackled him.  Once Sephers was on the ground, the officers handcuffed him.

2   At the time he saw Sephers confronting officer Dias, officer Wheaton was already familiar with

3   Sephers from the first 9-1-1 call.

4       The parties disagree as to exactly happened starting at the point where Sephers was

5   tackled.  Sephers stated in his verified complaint that Wheaton "stumped" him with his boots

6   several times when he tackled Sephers.  Sephers also stated that Wheaton twisted and turned his

7   arms "as hard as he could" when subduing him, and that both officers dragged him for an

8   unspecified distance.  Complaint, p. 3.  Both officers stated that they used the least amount of

9   force necessary to get Sephers' hands controlled and into handcuffs after he was tackled and

10  both deny they stomped on or dragged Sephers by his arms.  Both officers thought there was a

11  real risk of danger to them from Sephers when they subdued him.

12      Sephers claims that he is pain from the injuries he suffered during the arrest.  He

13  submitted medical records showing that he had pain and problems with his right shoulder in the

14  months following the incident.  His medical records also show that when he was evaluated on

15  the day of his arrest, the nurse evaluating him wrote that Sephers told her that he had left

16  shoulder problems and was already taking Vicodin and Motrin.  See Flegel Decl., Exh. C.

17

18                          **VENUE AND JURISDICTION**

19      Venue is proper in the Northern District of California because the events or omissions

20  giving rise to the claims occurred in San Mateo County, which is located within the Northern

21  District.  See 28 U.S.C. §§ 84, 1391(b).  This court has federal question jurisdiction over this

22  action brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1331.

23

24              **LEGAL STANDARD FOR SUMMARY JUDGMENT**

25      Summary judgment is proper where the pleadings, discovery and affidavits show that

26  there is "no genuine issue as to any material fact and [that] the moving party is entitled to

27  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A court will grant summary judgment

28  "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendants' challenge to the Fourth Amendment claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendants' qualified immunity defense, the moving party bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537; see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Sephers' verified complaint is considered in opposition to the motion for summary judgment even though

he did not file a declaration with his opposition brief.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  See id. at 631.

**DISCUSSION**

A.    Excessive Force Claim

A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure is analyzed under the Fourth Amendment reasonableness standard.  See Graham v. Connor, 490 U.S. 386, 394-95 (1989).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake."  Id. at 396 (citations omitted).  Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight."   Id. at 396-97. "Gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment." Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001) (physical and verbal sexual harassment of an arrestee violates the Fourth Amendment); Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir. 1994) ("no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  is completely under control").

2      The force used here was not unreasonable as a matter of law. Although the severity of

3  the crime that officer Dias was responding to was not great (i.e., the 9-1-1 call was that Sephers

4  was causing a disturbance at the Backey home), it was the second call of the night about Sephers

5  causing a problem at the home and the circumstances worsened once officer Dias arrived and

6  attempted to deal with Sephers. Just as a routine traffic stop can escalate into a much more

7  dangerous situation, so too can a call about a late night disturbance at a residence. Before any

8  force was used on Sephers, more serious circumstances developed. The undisputed facts are that

9  Sephers failed to comply with officer Dias' commands to remove his hand from his waistband

10  area when he was first encountered, Sephers ran away from officer Dias, Sephers refused

11  commands to stop running and to get on the ground, Sephers did not put his hands in the air once

12  he reached the dead-end, and Sephers advanced toward officer Dias in a physically threatening

13  manner. The undisputed facts also are that the officers perceived Sephers to pose an immediate

14  danger to them. Their perceptions were not at all unreasonable, as they were dealing with

15  someone who had fled, had refused repeated police commands, made movements that suggested

16  he had a weapon and moved toward officer Dias in a way that suggested he was about to attack

17  officer Dias. Additionally, at least officer Wheaton knew Sephers had a criminal history, knew

18  that Sephers had been drinking alcohol earlier on the night of the incident, and knew that

19  Sephers had failed to abide the directions an hour earlier to leave the home for the evening after

20  the first visit by the police. The need to use force to effect the seizure of the apparently

21  dangerous Sephers was a reasonable one.

22      Viewing the evidence in the light most favorable to Sephers as the non-moving party, the

23  amount of force used cannot be said to have been excessive under the circumstances, even if

24  Sephers was kicked during the tackling and his arms twisted forcefully as he was handcuffed.

25  Sephers suggests that he was tackled too aggressively, but the evidence does not support a

26  reasonable inference that the force used on him was excessive. He may have been blind-sided

27  by officer Wheaton's tackle, but at the time Sephers posed a threat to officer Dias. Officer

28  Wheaton had no duty to inform Sephers of the impending tackle. Sephers also has not raised

United States District Court
For the Northern District of California

a triable issue of fact that the force used by the officers was any more than that needed to get a resisting arrestee into handcuffs.  Cf. Johnson v. Woodard, 340 F.3d 787, 792-93 (9th Cir. 2003) (deputy's pulling and twisting of armed bank robbery suspect to extract him from the back seat of his car and take him into custody following a high-speed car chase and crash was objectively reasonable as a matter of law); Saman v. Robbins, 173 F.3d 1150, 1155-57 (9th Cir. 1999) (officer's split-second judgment to administer a single kick to subdue plaintiff in tense, uncertain and dangerous situation in which one officer had already been shot was objectively reasonable as a matter of law); Mendoza, 27 F.3d at 1362-63 (use of a police dog resulting in several bites to secure robbery suspect who was believed to be armed was objectively reasonable under the circumstances).  Sephers' contention that he was dragged by his arms does not raise a triable issue that the force was excessive, as he does not state the distance he was dragged so that it cannot be inferred that it was anything more than being lifted up by handcuffed arms to be taken to the police car.  The police are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct.  No reasonable jury could find that their conduct was not within that reasonable range under the circumstances.

Sephers' medical documents do not show any evidence of him being stomped or dragged – he had only a shoulder injury and only to one of his shoulders.  The fact that Sephers suffered a shoulder injury does not mean that either defendant acted improperly, as the tackling event was a reasonable use of force under the circumstances, as was the force used to get him into handcuffs once he was on the ground.

Sephers would parse the arrest into little pieces and examine the need for one kick or another yank of an arm, as if there was time for leisurely reflection between each physical act of force as the police subdued him that night.  Such an approach would be inconsistent with the Supreme Court's direction that the force must be analyzed making "allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

**United States District Court**
For the Northern District of California

1    Viewing the evidence in the light most favorable to Sephers, no reasonable jury could

2    find that defendants applied an excessive amount of force during his arrest.  Sephers failed to

3    establish a triable issue of fact as to whether he was subjected to excessive force by defendants,

4    Defendants are entitled to judgment as a matter of law on the Fourth Amendment claim.

5

6    B.    Qualified Immunity Defense

7    The defense of qualified immunity protects "government officials . . . from liability for

8    civil damages insofar as their conduct does not violate clearly established statutory or

9    constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

10   457 U.S. 800, 818 (1982).  The rule of qualified immunity "'provides ample protection to all but

11   the plainly incompetent or those who knowingly violate the law.'"  Burns v. Reed, 500 U.S. 478,

12   495 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

13   In the recent case of Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth

14   a particular sequence of questions to be considered in determining whether qualified immunity

15   exists.  The court must consider this threshold question:  "Taken in the light most favorable to

16   the party asserting the injury, do the facts alleged show the officer's conduct violated a

17   constitutional right?"  Id. at 201.  If no constitutional right was violated if the facts were as

18   alleged, the inquiry ends and defendants prevail.  See id.  If, however, "a violation could be

19   made out on a favorable view of the parties' submissions, the next, sequential step is to ask

20   whether the right was clearly established. . . .  'The contours of the right must be sufficiently

21   clear that a reasonable official would understand that what he is doing violates that right.'"  Id.

22   at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

23   The first step under Saucier is to determine whether a constitutional violation was

24   established.   No constitutional violation was established on the record.   Because no

25   constitutional right was violated on the facts taken in the light most favorable to Sephers, the

26   inquiry ends and defendants prevail.  See Johnson, 340 F.3d at 791-94.  Defendants are entitled

27   to judgment as a matter of law on their qualified immunity defense.

28

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

### CONCLUSION

Defendants' motion for summary judgment is GRANTED.   (Docket # 13, # 14.) Judgment will be entered in defendants' favor and against plaintiff.  The clerk will close the file.

IT IS SO ORDERED.

Dated: February_5, 2007

SUSAN ILLSTON
United States District Judge